In re EGL EAGLE GLOBAL LOGIS-
TICS, L.P., f/k/a Eagle USA Air-
freight, Inc., Relator.

No. 01–02–00148–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 24, 2002.

Original Proceeding on Petition for Writ of Mandamus.[1]

W. David George, Edwards & George, LLP, Houston, TX, for EGL Eagle Global Logistics.

Alan N. Magenheim, Magenheim Bateman & Helfand, P.L.L.C., John W. Havins, Burt, Barr, Havins & O'Dea, L.L.P., Stephen J. Schechter, Stephen J. Schechter, P.C., Houston, TX, for Real Party In Interest.

Panel consists of Justices NUCHIA, JENNINGS, and RADACK.

## OPINION

TERRY JENNINGS, Justice.

By petition for writ of mandamus, relator, EGL Eagle Global Logistics, L.P. f/k/a Eagle USA Airfreight, Inc. ("Eagle"), challenges the trial court's January 11, 2002 order compelling Eagle to arbitrate its claims brought against the real parties in interest and defendants below, Frederick Lalumandier, Steven Lalumandier, Randy Cockrell, Leann Wilmot, Expedited Logistics and Freight Services, Ltd. ("ELFS"), and ELFS Management, Inc. (collectively, "the ELFS entities").

We deny the petition for writ of mandamus.

## Facts and Procedural Background

Eagle is a freight forwarding company located in Houston. David Flake is a former Eagle salesperson and one of the real parties in interest here. In May 1999, Flake, while employed by Eagle, and a representative of Eagle signed a document entitled "Employment Agreement," which contains the following arbitration clause:

> The Company and Employee agree that in the event of any legal dispute between the parties concerning this Agreement or legal rights arising from or relating to the employment relationship between the Company and Employee, the parties shall submit their dispute to binding arbitration. . . . The arbitration will be conducted under the authority of the Federal Arbitration Act.

In addition, the employment agreement contained provisions prohibiting Flake from using or disclosing Eagle's "trade secrets" and "confidential information," including market, pricing, and cost information, and customer lists and contacts, for any purposes other than "the exclusive benefit of [Eagle]" both during his employment with Eagle and "at any time thereafter." The employment agreement also contained a one-year, non-competition covenant.

---

1. The underlying case is styled *EGL Eagle Global Logistics L.P. f/k/a Eagle USA Airfreight, Inc. v. David Flake, Frederick Lalumandier, Randy Cockrell, Expedited Logistics and Freight Services, Ltd., ELFS Management,* *Inc., Steven Lalumandier, and Leann Wilmot,* cause number 2001–51486, in the 127th Judicial District Court of Harris County, Texas, the Hon. Sharolyn Wood, presiding.

Flake was employed by Eagle until October 2001, when he went to work for ELFS, one of Eagle's competitors. Shortly thereafter, Eagle sued Flake for breach of contract, alleging that he had breached the terms of the employment agreement by improperly disclosing Eagle's trade secrets and confidential information and by soliciting Eagle's customers. Eagle sought an injunction to prevent Flake from using or disclosing business information that he had obtained while employed by Eagle and from soliciting Eagle's customers. The trial court granted the injunction and ordered Eagle and Flake to arbitrate their dispute in accordance with the provisions of the employment contract.[2]

Eagle also named the ELFS entities as defendants, and it alleged claims against them and Flake jointly for misappropriation and theft of its trade secrets and confidential information, tortious interference with its existing business relationships, and civil conspiracy. In response, the ELFS entities filed a motion to compel arbitration of all of Eagle's claims against them. The trial court subsequently granted the motion.[3]

### Mandamus

 Mandamus is the proper means for seeking review of an order compelling arbitration under the Federal Arbitration Act ("FAA"). *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex.1994). Mandamus will issue only to correct a clear abuse of discretion or violation of a duty imposed by law when that abuse cannot be remedied by appeal. *Jack B. Anglin Co., Inc. v.*

*Tipps*, 842 S.W.2d 266, 272 (Tex.1992). A trial court abuses its discretion when it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

 A presumption exists in favor of agreements to arbitrate under the FAA. *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex.1995). However, the strong federal policy of resolving doubts in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or to allow modification of the plain and unambiguous provisions of an agreement. *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 356 (Tex.App.-Houston [1st Dist.] 1995, no writ). Although courts may enforce arbitration agreements, a court may not generally order arbitration in the absence of such an agreement. *Freis*, 877 S.W.2d at 284; *Hou–Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding).

### Analysis

The parties do not dispute the existence of a valid arbitration agreement between Eagle and Flake. Nor do they contest the fact that the ELFS entities were not signatories to the employment agreement and have no contractual right to arbitration.

 The ELFS entities argue that they are entitled to compel arbitration under the theory of equitable estoppel because Eagle's claims against them are intertwined with and dependent upon Eagle's employment agreement with Flake. Equi-

---

**2.** Flake unsuccessfully challenged the injunction in *Flake v. EGL Eagle Global Logistics, L.P. f/k/a Eagle USA Airfreight, Inc.*, No. 14–01–01069–CV, 2002 WL 31008136 (Tex.App.-Houston [14th Dist.] Sept. 5, 2002, n.w.h.) (not designated for publication).

**3.** Real party in interest and defendant below, Steven Lalumandier, was not served with process until after the trial court signed its January 11, 2002 order. However, the parties filed a written agreement making Eagle's claims against him subject to that order as well. *See* Tex.R. Civ. P. 11.

table estoppel allows non-signatories to compel arbitration in two circumstances: (1) when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatories and a signatory or (2) when the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration clause in asserting the signatory's claims against the non-signatories. *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 482 (Tex. App.-Dallas 2001, no pet.) (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.), *cert. denied*, 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000)); *Texas Enters., Inc. v. Arnold Oil Co.*, 59 S.W.3d 244, 249 (Tex.App.-San Antonio 2001, no pet.); *see also Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 348 (5th Cir.2002).

■ Eagle first argues that its claims against the ELFS entities do not rely upon an interpretation of the employment agreement, are not based on the same operative facts as its claims against Flake, and are not inherently inseparable from its claims against the ELFS entities. However, in its third amended petition, Eagle alleged a cause of action for misappropriation and theft of its trade secrets and confidential information "against all defendants," as follows:

> Since Flake's departure from Eagle and his immediate commencement of employment with ELFS, and possibly before that time, Lalumandier, Cockrell, and ELFS have prepared for, *assisted, ratified, and benefitted from* Flake's prohibited and unlawful conduct. Specifically, [the ELFS entities] have utilized and profited from the misappropriation or theft of Eagle's confidential business information, including customer lists and contact information. These intentional disclosures or misuses were wholly unauthorized and constitute breaches of confidence to Eagle's disadvantage.

(Emphasis added.) In its claim for civil conspiracy, Eagle alleged that the *"[d]efendants ...* secretly *conspired, agreed, and endeavored* to deprive Eagle of confidential information, current and prospective business agreements and advantages, and business goodwill." (Emphasis added.)

Moreover, in its third amended petition, Eagle brought its causes of action for misappropriation and theft of trade secrets and for civil conspiracy jointly "against all defendants" and alleged concerted, coordinated acts by the real parties in interest. Thus, we conclude that, in its pleadings, Eagle raised allegations of "substantially interdependent and concerted misconduct" by the real parties in interest. *See McMillan*, 66 S.W.3d at 482.

Eagle next contends that, because Flake was not an agent or employee of the ELFS entities at the time he signed the employment agreement with Eagle, the trial court erred in applying the theory of equitable estoppel to compel arbitration of Eagle's claims against the ELFS entities. We disagree. Eagle relies on several cases in which courts have applied equitable estoppel to compel arbitration in circumstances involving an agency, employment, or parent/subsidiary relationship between a signatory and the non-signatory seeking to compel arbitration. *See id.* (non-signatories were employees or agents of signatory); *In re Nasr*, 50 S.W.3d 23, 28 (Tex.App.-Beaumont 2001, orig. proceeding) (individual non-signatory was president of signatory corporation); *In re Educ. Mgmt. Corp., Inc.*, 14 S.W.3d 418, 424–25 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) (non-signato-

ries were alleged "alter egos" of signatory); *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 592–93 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (non-signatories were subsidiary, parent, or sister corporations of signatory entities); *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 520 (Tex.App.-Austin 1998, no pet.) (non-signatory was third-party beneficiary of contract containing arbitration clause); *Merrill Lynch v. Eddings*, 838 S.W.2d 874, 879 (Tex.App.-Waco 1992, writ denied) (non-signatories were settlor and beneficiaries of trust containing arbitration clause).

▪ However, none of these cases requires a non-signatory party seeking to compel arbitration under a theory of equitable estoppel to establish the existence of an agency, employment, or corporate parent/subsidiary relationship between it and a signatory to compel arbitration. Rather, such relationships can be a factor to be considered by a court in determining whether the claims presented by the signatory party resisting arbitration against a non-signatory are inherently inseparable from its arbitrable claims brought against another signatory. *In re Educ. Mgmt. Corp., Inc.*, 14 S.W.3d at 424–25; *Valero*, 2 S.W.3d at 592–93.

▪ Finally, Eagle contends that the trial court abused its discretion in applying the doctrine of equitable estoppel because the ELFS entities came to court with "unclean hands." As an equitable theory, estoppel is subject to traditional equitable defenses. *Texas Enters.*, 59 S.W.3d at 249; *ANCO Ins. Servs. of Houston, Inc. v. Romero*, 27 S.W.3d 1, 6 (Tex. App.-San Antonio 2000, pet. denied). The defensive doctrine of "clean hands" requires that one who comes to court seeking equity must come with clean hands. *Texas Enters.*, 59 S.W.3d at 249; *Romero*, 27 S.W.3d at 6. As evidence of unclean

hands, Eagle re-argues the claims in its petition, alleging that the ELFS entities "tortiously interfered with and conspired to induce" Flake to breach the employment agreement and, therefore, should not be allowed to compel arbitration under that same agreement. Such allegations do not amount to evidence of unclean hands and would essentially require this Court to find Eagle's causes of action meritorious in the absence of any evidentiary hearing or trial.

Because Eagle's causes of action against Flake and the ELFS entities raised allegations of "substantially interdependent and concerted misconduct," we hold the trial court did not abuse its discretion in compelling Eagle, under the theory of equitable estoppel, to arbitrate its claims alleged against the ELFS entities.

### Conclusion

We deny Eagle's petition for mandamus relief.