In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00311-CV

_____

**KATHRYN MANION HAIDER, COURTNEY Y. MANION CURTIS, EDWARD D. MANION JR., KRISTIN MANION ACUÑA, GENESIS WEALTH MANAGEMENT, AS INDEPENDENT EXECUTOR OF THE ESTATE OF MILDRED Y. MANION II, DECEASED, ET. AL., Appellants**

**V.**

**JEFFERSON COUNTY APPRAISAL DISTRICT AND JEFFERSON COUNTY APPRAISAL REVIEW BOARD, Appellees**

_____

**On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-189,288**

_____

**MEMORANDUM OPINION**

The principal issue in this ad valorem tax suit concerns whether the City of Beaumont is entitled to collect taxes from parties who own minerals associated with a tract that lies outside the City's tax boundary (the tract at issue). The parties do not dispute that owners of the mineral interests in the tract at issue pooled their minerals, and they do not dispute that the pool created by the lessee of the minerals

lies largely within the City's tax boundary. However, the parties dispute whether the pooling of the minerals resulted in the owners of the tract at issue owning minerals that lie within the City's tax boundary.

On cross-motions for summary judgment, the trial court granted the Appraisal District's motion, reasoning that the pooling resulted in the owners of the tract at issue owning minerals that were subject to the City's right to collect ad valorem taxes. The trial court also denied the motion for summary judgment filed by owners of the Manion interest,[1] who asserted the minerals they own are not subject to the City's ad valorem tax because their minerals lie outside the City's tax boundary.

Because the summary judgment evidence does not include the mineral leases associated with the tract at issue, we conclude neither party met its summary judgment burden to allow the trial court to conclusively determine if the pooling of the leases associated with the tract at issue resulted in a cross-conveyance of the minerals from those owning the minerals that are associated with the tracts lying inside the City's tax boundary. Because both parties failed to conclusively

_____

[1] The appellants in the case are Kathryn Manion Haider, Courtney Y. Manion Curtis, Edward D. Manion Jr., Kristin Manion Acuña, Genesis Wealth Management, as Independent Executor of the Estate of Mildred Y. Manion II, Deceased, Compass Bank, as Trustee of the Augustine Guillermo Acuña III, Education Trust, and the Ava Cherry Acuña Education Trust, (collectively, the "Manions") and Cimarex Energy Co.

2

establish the effect of the pooling on the tract at issue, the trial court could not conclusively determine whether the minerals held by the owners of the Manion interest were subject to the City's ad valorem tax. We remand the cause for further proceedings consistent with the Court's opinion.

## Background

The owners of the Manion interest own the mineral rights to a 400.76 acre tract that lies outside the City's tax boundary. The owners of the Manion interest subsequently pooled 83.35 acres of their 400.76 acre tract into a 425-acre gas unit. The pool associated with the 425-acre gas unit lies largely but not wholly within the City's tax boundary.

When Cimarex Energy successfully completed wells that produce from the pool, the Appraisal District, acting on behalf of the City of Beaumont, assessed an ad valorem tax on the minerals associated with the 83.35 acre tract at issue. The Appraisal District sent notices to the owners of the Manion interest advising that they owed ad valorem taxes on their minerals in the 83.35 acre tract. In 2011, the owners of the Manion interest filed suit against the Appraisal District, claiming that their interest was associated with a tract that is not located within the City's tax boundary. Subsequently, both sides to the dispute filed cross-motions for summary judgment, and following a hearing, the trial court concluded that the

minerals associated with the Manion interest were taxable based on the percentage the minerals associated with the 83.35 acre tract represented to the pool.[2]

In addition to granting the Appraisal District's motion for summary judgment, the trial court also dismissed the claims filed by the owners of the Manion interest against the Appraisal District. It also determined that two of the individuals that own leases in the 83.35 acre tract at issue, Courtney Y. Manion Curtis and Kathryn Manion Haider, had forfeited their rights to contest the Appraisal District's assessment for the taxes assessed in 2012 because they had failed to timely pay the 2012 assessment before their liability for that assessment became delinquent. Subsequently, the owners of the Manion interest perfected their appeal from the trial court's rulings.[3]

Standard of Review

The appeal is based on the trial court's rulings on a legal issue, the legal effect of the pooling of the leases that relate to the 83.35 acre tract. In this case, the

[2] In its judgment, the trial court found that the Appraisal District was entitled to "proportionately assess property for taxes on the royalty interests based on the location of the real property to which the leases pertain."

[3] The owners of the Manion interest did not include any issues in their appeal raising a complaint regarding the trial court's ruling that the Jefferson County Appraisal Review Board was entitled to be dismissed from the suit, and they did not complain on appeal that the trial court's ruling denying their claim seeking to recover attorney's fees. With respect to these rulings, which were not challenged in the appeal, the trial court's judgment became final. *See* Tex. R. App. P. 44.1(b).

4

summary judgment evidence included copies of the Oil, Gas and Liquid Hydrocarbon Lease Memoranda signed by the individuals who own the minerals to the 83.35 acre tract. The Lease Memoranda, which was signed by the various lessors who own the minerals in the 83.35 acre tract, summarizes the terms of the lease and refers to a lease as being "incorporated herein by reference and made a part hereof as if set forth at length[.]" Importantly, with respect to the summary judgment proceedings, the parties failed to submit the lease referenced in the Lease Memoranda to the trial court so that its terms could be construed in evaluating which parties were entitled to judgment.

Construing an unambiguous oil and gas lease presents a question of law for the court. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). Accordingly, we review questions that involve the interpretation of a lease using a de novo standard. *See id.* When both sides to a case move for summary judgment, and the trial court grants one motion and denies the other, all of the summary judgment evidence before the trial court is reviewed in an appeal to determine the questions presented by the parties in their competing motions. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In cases arising from a ruling on cross-motions for summary judgment, the

appeals court is required to render the judgment the trial court should have rendered when resolving the parties' competing motions, if possible. *Id.*

Analysis

The issue presented by the parties' motions required the trial court to determine whether the City of Beaumont could collect ad valorem taxes from the owners of the Manion interest. In their first three issues, the owners of the Manion interest assert that the City was not authorized by the Legislature to collect a tax on their mineral interests, an interest that is associated with the 83.35 acre tract that lies outside the City's tax boundary.

An appraisal district's authority to assess taxes on a City's behalf is based on the Tax Code. *See* Tex. Tax Code Ann. § 6.01 (West 2015) (providing that each county has an appraisal district which is responsible for appraising property in its district for ad valorem tax purposes for each taxing unit who imposes ad valorem taxes in the district). Under the Tax Code, "[r]eal property is taxable by a taxing unit if located in the unit on January 1[.]" *Id.* § 21.01 (West 2015). By definition, "real property" is defined by the Tax Code to include a "mineral in place[.]" *Id.* § 1.04(2)(D) (West 2015). Given these provisions, to collect taxes an appraisal district must show "that the property it seeks to assess has a taxable situs within the limits of its boundaries." *Oake v. Collin Cty.*, 692 S.W.2d 454, 455 (Tex. 1985).

6

Otherwise, "the appraisal district has no authority to incorporate the realty into its assessment." *Devon Energy Prod., L.P. v. Hockley Cty. Appraisal Dist.*, 178 S.W.3d 879, 883 (Tex. App.—Amarillo 2005, pet. denied).

In this case, there is no dispute that the surface of the 83.35 acre tract lies outside the City's tax boundary, and it is also undisputed that most of the acreage contained in the 425-acre gas unit lies within the City's tax boundary. And, while the Tax Code authorizes a tax unit's authority to tax "minerals in place," it does not indicate how minerals in pooled units should be treated when the unit's pool crosses tax boundaries. Nonetheless, even though the Tax Code does not clearly provide taxing authorities guidance regarding how they should treat the taxation of a pooled unit, the Tax Code and cases interpreting it require that the taxed property lie within the tax boundary before the property can be subjected to ad valorem taxes. *See* Tex. Tax Code Ann. § 21.01; *Oake*, 692 S.W.2d at 455.

Based on the cross-motions for summary judgment, the trial court was required to decide whether the owners of the Manion interest own minerals that lie within the City's tax boundary. In this case, that issue revolves around the leases signed by the owners of the Manion interest that presumably include language relevant to pooling. Under Texas law, the effect of pooling on the question of whether the leaseholders who have agreed to pool their minerals acquire a legal

7

interest in the minerals located elsewhere in the pool depends upon the language found in the lease that is being pooled. *See Veal v. Thomason*, 159 S.W.2d 472, 476 (Tex. 1942) (holding that in Texas, whether the pooling of mineral interests results in the cross-conveyance of all of the interest amongst the pool, depends upon the terms of the lease). Generally, if the language in the lease being pooled affects a cross-conveyance among the owners of minerals of the various tracts placed in the pool, the owners of the pooled leases "all own undivided interests under the unitized tract in the proportion their contribution bears to the unitized tract." *Montgomery v. Rittersbacher*, 424 S.W.2d 210, 213 (Tex. 1968) (citing *Veal*, 159 S.W.2d at 472). On the other hand, when a lease contains language that prevents a cross-conveyance of the lessor's minerals to the others who own the minerals being pooled, the lessor does not own a percentage of the minerals associated with the other tracts placed into the pool. *See, e.g., Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 422 (Tex. 2008) (discussing the effect of a lease term that provided that pooling "shall not constitute a cross-conveyance of interests").

In this case, the summary judgment evidence did not include the lease that contained the agreement under which the owners of the Manion interest agreed to pool their leases. The Lease Memoranda, which the Appraisal District filed, does

8

not include language relevant to the pooling by the owners of the Manion interest of their lease. Without the mineral lease that governs the pooling of the minerals in the 83.35 acre tract, the trial court did not have the evidence that it needed to decide whether a cross-conveyance resulted when the lease held by the owners of the Manion interest was pooled, making them proportionate owners of a portion of the minerals located within the City's boundary. Because the relevant mineral lease was not filed in support of either summary judgment motion, we conclude that both parties failed to conclusively establish whether a cross-conveyance of minerals occurred. *See* Tex. R. Civ. P. 166a(c); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

Given the summary judgment evidence before the trial court, we hold the trial court should have denied both parties' motions on the question of whether the owners of the minerals associated with the 83.35 acre tract own minerals that lie within the City's tax boundary. To the extent issues one through three complain that the trial court erred in granting the Appraisal District's motion, the issues are sustained. *See Mann Frankfort*, 289 S.W.3d at 848.

We need to address two other arguments in the parties' briefs to resolve the appeal. First, we address one of the trial court's alternate holdings, that the doctrine of quasi-estoppel applied to prevent the owners of the Manion interest from

9

challenging the City's decision to assess an ad valorem tax on their minerals. With respect to the issue of quasi-estoppel, the Appraisal District asserted and the trial court agreed that the owners of the Manion interest could not contest the City's tax assessment because they had benefitted from the pooling of their lease into the 425-acre unit. The owners of the Manion interest complain about this ruling in their fourth issue, arguing that the record demonstrates the doctrine of quasi-estoppel does not prevent them from challenging the City's right to tax their minerals.

The doctrine of quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). "The doctrine applies when it would be unconscionable to allow a party to maintain a position inconsistent with one to which the party acquiesced, or from which the party accepted a benefit." *Cimarron Country Prop. Owners Ass'n v. Keen*, 117 S.W.3d 509, 511 (Tex. App.—Beaumont 2003, no pet.).

In this case, the evidence does not show that the owners of the Manion interest acquiesced when they were asked to pay the tax at issue; instead, they exercised their administrative rights to file tax protests and filed suit to contest the City's attempt to assess taxes on minerals that they claim lie outside the City's tax

boundary. Moreover, accepting revenues from the production of minerals from a pooled unit is not necessarily inconsistent with claiming that the minerals associated with a tract are not taxable because they lie outside a taxing units boundaries, as whether the minerals being taxed lie within or outside the boundaries is a matter that depends on language in a lease that has not yet been construed. Whether that lease resulted in a cross-conveyance remains undetermined.

We hold that by accepting royalties on the production from the pooled unit, the owners of the Manion interest have not necessarily taken positions that are inconsistent with their claim that their minerals are not within the City's tax boundary. *See State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979) (explaining that courts determine the expediency, necessity, and propriety of equitable relief). We reverse the trial court's holding that the doctrine of quasi-estoppel applies under the circumstances presented by this record.

Last, we address whether Courtney Y. Manion Curtis and Kathryn Manion Haider forfeited their right to contest the Appraisal District's assessment of the City's ad valorem tax on their mineral interest for the tax year 2012 by failing to pay the 2012 assessment before their assessment became delinquent. In their brief, Curtis and Haider argue the trial court erred in its holding that they forfeited their

11

right to contest the taxes assessed on their mineral interest associated with the tract at issue. *See* Tex. Tax Code Ann. § 42.08 (West 2015) (providing for the forfeiture of remedies due to the nonpayment of taxes).

As the interests owned by Curtis and Haider may be proven to indicate that their interest lies outside the City's tax boundary, they are entitled to contest the tax even though they did not pay the assessment. *See Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 & n.2 (Tex. 2006) (holding that individuals who failed to file administrative protests may still assert claims that their properties were outside the boundaries of the taxing unit and were not subject to being taxed). We hold the trial court erred in dismissing the claims of Curtis and Haider based on their failure to pay the City's 2012 tax assessment. *Id.*; *see also Jefferson Cty. Appraisal Dist. v. Morgan*, No. 09-11-00517-CV, 2012 Tex. App. LEXIS 1037, at **8-9 (Tex. App.—Beaumont Feb. 9, 2012, no pet.) (holding that the portion of the taxpayer's complaint pertaining to whether he owned the property was not barred by his failure to exhaust his administrative remedies).

## Conclusion

We reverse the trial court's ruling granting the motion for summary judgment of the Appraisal District on the properties identified in the judgment by account number, as listed in paragraph nine of the trial court's final summary

judgment. We also reverse the trial court's ruling in paragraph three of the judgment, which foreclosed Curtis's and Haider's right to challenge the City's assessment of ad valorem taxes on their minerals. Finally, we reverse the trial court's ruling in paragraph seven of the judgment, which foreclosed the owners of the Manion interest from challenging the City's right to assess an ad valorem tax on the 83.35 acre tract based on the doctrine of quasi-estoppel. Because we cannot conclusively determine whether the pooling of the 83.35 acre tract resulted in a cross-conveyance of the minerals between the lessors owning the minerals in the 425-acre pool that lies partially within the City's tax boundary, we conclude that we cannot render judgment in favor of either party, and we remand the cause to the trial court for further proceedings.

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on April 9, 2015
Opinion Delivered April 14, 2016

Before Kreger, Horton, and Johnson, JJ.

13